Marshal, the Supreme Court is reconvening. Good morning, ladies and gentlemen. I'm Chief Justice Rita Garman, and on behalf of myself and my colleagues, Justices Freeman, Thomas, Kilbride, Carmeier, Burke, and Tice, I'm pleased to welcome you to this session of the May 2014 May term of the Court. I'd particularly like to extend a welcome to the administrators, students, and teachers from LaSalle Poole High School, Otto High School, and Marquette High School. We're delighted to have you here, along with all of our other spectators. The Court holds five such terms each year, and in each term we hear oral arguments on cases that are pending before the Supreme Court. These cases have arrived here after a judgment entered by the Circuit Court, and an appellate court has reviewed the case. One of the parties has then filed a petition for leave to appeal with the Supreme Court, and a majority of the justices voted to hear the case. The parties have then submitted written briefs, which we have studied, so we are well aware of the argument, we have the opportunity as a court to ask questions of the attorneys, and the parties have one final opportunity to persuade us on the merits of their particular position. After the arguments are concluded, we will take the matter under advisement. The Court will then issue a written opinion in several months' time, disposing of the case. We are the historic Ottawa Courthouse, and we would like to thank everyone involved who have made this possible, including the attorneys who have so graciously agreed to present their oral arguments here today. We're going to hear two cases this morning. The first involves a challenge to a sentence imposed in a criminal case, and the second is a civil case regarding the use of red light cameras by the City of Chicago. I hope that each and every one of you find today's proceedings interesting and educational, and that you'll be able to gain a greater understanding of our judicial process. With that, I would like to call the first case of the day, which is 116-572, People of the State of Illinois v. Mickey D. Smith. Are the parties ready to proceed? Good morning. May it please the Court, Counsel. I am Assistant Attorney General Stephen Soltanzade on behalf of the people. I'm going to begin with a very brief factual background and then transition into the argument. The crime at issue here occurred in June of 2010 at a gathering at a house in Joliet. The victim was at this gathering. Apparently there was a conflict between him and one of the guests, and that guest called the defendant. The defendant arrived armed with a handgun. The victim opened the garage door. The defendant went to the garage, fired a single shot that killed the victim. The defendant then fled, and he was later arrested in Lafayette, Louisiana about four months after the crime. The defendant was charged with murder, and the people also alleged that a 25-year sentencing enhancement had to be included with his sentence because he used a firearm in commission of murder. Eventually the parties came to a plea agreement. The defendant agreed to plead guilty, and in exchange he received a 30-year prison term. The people dismissed all the remaining charges, and they also withdrew the allegation that the firearm enhancement applied. In June of 2011, this Court decided people be white, where it held that if the indictment and the factual basis for a plea indicate that a firearm was used in a murder, then the defendant in this case filed a post-conviction petition raising a claim under white, arguing that because the enhancement wasn't applied to his sentence, his sentence was void. The circuit court dismissed that post-conviction petition, but the appellate court reversed, holding that white error can be raised on post-conviction review, and white applied retroactively to the defendant's case. The people filed a PLA, a petition for leave to appeal, that this Court granted, and now the question here is can defendant raise a claim under white on post-conviction review? The answer to that question is no, for three reasons. First, white error, this Court should hold that white error renders a judgment merely, a sentence merely voidable, not void. Second, white did not establish a constitutional rule of criminal procedure. For that reason, it cannot be applied on post-conviction review. And finally, white established a new rule, and therefore does not apply retroactively under the Teague test that this Court has adopted. Counsel, may I ask you, did you raise that first issue in your petition for leave to appeal, that we should consider the issue of void versus voidable? It was not expressly raised in the petition for leave to appeal. It was raised in our reply brief in response to defendant's argument in the appellee's brief. The appellee's brief appears to concede that generally, unless a rule establishes a constitutional rule, it cannot be applied on post-conviction review. But defendant says that where an order is void, it cannot only be applied on post-conviction review, but the defendant can rely on any precedent, including precedent that was decided after the conviction was final. So to respond to that argument, we raise this distinction between void and voidable, because the void nature of the order cannot be relevant until that point. Turning to that argument, courts generally have jurisdiction to sentence criminal defendants, and a statutory sentencing error cannot destroy that jurisdiction. And for that reason, people v. White, an error under people v. White, and generally sentencing errors, they're statutory sentencing errors, should not be void. They should merely be voidable. Now this Court has said otherwise. We acknowledge that. In cases like people v. Arna, people v. Thompson, and other cases, this Court has said multiple times that where a sentence is outside the sentencing range, it is void. But that rule cannot be reconciled with Article 6, Section 9 of the Constitution, which confers circuit courts with original jurisdiction over all justiciable matters, nor can it be reconciled with this Court's line of cases, beginning in Belleville, Toyota, where this Court clarified that subject matter jurisdiction is conferred entirely by the Constitution. In In re Luis R, this Court said that the only consideration regarding subject matter jurisdiction is whether the case is in the general class of cases that the Court has inherent power to hear. There's no question that sentencing falls within that inherent power of the circuit court. Counsel, you've already mentioned that when a court exceeds its authority, this Court has held that a court exceeds its authority when it orders either a lesser or greater that the defendant's sentence, in light of that, could have been vacated at any time, make on your argument. Well, I think to answer the question, first of all, there are several mechanisms to answer all sorts of errors that happen in the circuit court. Holding that a sentencing error like this one, that is outside the statutory range, is merely void, or wouldn't deny defendants an opportunity to correct that sentence. I don't know if I'm answering the question. Go ahead. But there's mandamus. If the sentence is too long, the defendant could possibly raise a due process claim on post-conviction review. There are section 214.1 petitions. And then, of course, there's direct appeal, which is the way that most errors that happen in the trial court are corrected. So there are several, without this voidness rule, there are still several mechanisms for correcting sentencing errors. Now, yes, this Court has said Would the State be able to issue a voidable error in sentencing if it was not a void sentence say 20 years from the date of sentencing? Well, there are examples where the State has, on mandamus, corrected sentencing errors. There have been cases where, for example, a court has ordered two sentences to run concurrently when the law has said they must run consecutively. And the State, through mandamus procedures, said no, the circuit court is required to run those sentences consecutively. And this Court, and lower courts too, have granted mandamus relief in those types of cases. Right, but in this case, the defendant under mandamus would get a greater sentence, right? That's right. So the defendant in this case could file a mandamus petition and ask his sentence to be corrected. I don't think a defendant in this position would normally want to do that. But that, where the sentence is wrong No, but isn't his position that he didn't get the benefit of the bargain then? Well With respect to the plea? Because, meaning that the sentence could be vacated and therefore he did not get the benefit Well, I don't think the State, in this particular case, could on mandamus have a defendant's sentence raised 15 years to bring it into the statutory range because I think you'd have a due process problem. You know, cases like Whitefield that said, where defendant bargains for a particular sentence, that sentence cannot be raised even if there's some sort of error. So if the State, in this case, went to the court Voidability aside for just a second, looking at the other remedies available, where there's this type of sentencing error, if the State came in in a case like this and said, actually defendant's sentence must be 15 years longer, I don't think the proper remedy would be just to raise the sentence. I think you would probably have a due process problem in the vein of Whitefield, and that the defendant would not have gotten the benefit he bargained for. Now the sentence would still be illegal, so there would have to be some remedy. I suppose vacating the sentence at that point might be the proper remedy. But certainly there are other mechanisms in place. So just to be clear, Counsel, in People v. Arna in 1985, this line of cases began. That was a case in which the defendant appealed, raised certain issues of error, the appellate court dealt with those and found them without merit, and then on its own found that the sentence was illegal. That issue then went to the Illinois Supreme Court, and it was the State that argued from what I can understand from reading the case. It was the State that argued that the appellate court had the authority to do what it did because the sentence was void, and because this legislature had set the sentencing range and the court could not give it a legal sentence whether it was a mistake or not. So for 19 years based on the State's argument in Arna, we have a whole body of cases that have followed this void doctrine. Are you asking us today to I think there are a couple of answers. First, let me answer your question directly. We're asking, in a case like Arna, which is actually a direct appeal and other direct appeals where the voidness issue has come up, I don't think this court necessarily has to overturn that authority. But yes, we are asking this court to hold that a sentencing error does not render a sentence void. But if I can, although Arna is the case most often cited for this voidness rule, the rule reaches back to a time before the constitutional amendment of 1964. In 1964 that amendment is what made jurisdiction a subject of constitutional not statutory authority. If you look at Arna and trace back to citations in Arna, Arna doesn't come up with this rule out of cold cloth. There are citations in Arna and those go back, and if you follow the line of cases in Arna all the way back, it goes to a time when jurisdiction was conferred by statute. And that's true of other cases, in People v. Thompson, in a case where this court directly dealt with the issue of void versus voyable. The citations in Thompson go back to, if you trace them back, their lineage goes to a time before the constitutional amendment of 1964. Now Bellville-Toyota has said, which was a 2002 case, said look, it took a long time for Illinois courts to sort out subject matter jurisdiction under the constitutional amendment of 1964. Bellville-Toyota decided 38 years after that constitutional amendment, and in Bellville-Toyota this court said expressly, look, there's still some courts that are confused. There's still some courts in Illinois that believe that there can be a statutory prerequisite to jurisdiction. And Bellville-Toyota says, no, that's not the case. So it's not surprising that it's taken a while to sort this out. Now Bellville-Toyota, N. Ray M. W., N. Ray Luis R. have finally sorted it out as a general matter when it comes to jurisdiction. But there's still one area where it hasn't been sorted out, and that's this court's voidness rule. And it's because the cases that discuss voidness, like Arma, have not really grappled with that constitutional amendment. This court has said multiple times, such as in cases like N. Ray M. W. or People v. Davis, that voidness is purely a question of jurisdiction. And yet if it's purely a question of jurisdiction, then that voidness rule at some point has to be reconciled with the Constitution, because the Constitution is where jurisdiction comes from. For that reason, even though we are asking this court to revisit its prior holdings, what we're really asking it to do is reconcile two holdings that conflict with each other. The Bellville-Toyota line of holdings that are rooted in the Constitution, and then this voidness rule, which really traces back to a time before the constitutional amendment. And because Bellville-Toyota and that line of cases is rooted in the Constitution, this court should hold that under those cases where a court makes a sentencing error, like the error in White, like the error in this case. That error is merely voidable. Yes, it can be corrected. There are lots of ways to correct it. But it's not void. Just a minute. What are the lots of ways to correct it? You've mentioned Mandamus. You've already mentioned that the state would be precluded from trying to get the mandatory enhancements since they were part of the agreement. How would that get to this court or another court to change the sentence to the proper sentence? Well, I think direct appeal is one option. If there's a sentence that's outside the statute, we're not always going to talk about plea agreements. So the defendant files a direct appeal and says, I want the mandatory enhancements added to my sentence? I don't think a defendant would. All right. So my question remains. How does it get there? Well, the people can still use the Mandamus procedure. You've already said that they can't. They can use the procedure. What they can't do is just have the sentence unilaterally raised. It would appear there would be some sort of due process problem with that. That doesn't mean a court couldn't fashion some sort of remedy where either the parties go back for plea bargaining or the case, that sentence is vacated and they go back to trial. But it would be no worse than the remedy now. It would be no more damaging to this court's interest in finality to see those types of cases where the state raises a claim on Mandamus that a sentence has to be raised, that the remedy is to go back to the trial court and vacate the unlawful portion of the sentence. Counsel, if we do agree with you on the remedy issue and we send this case back to allow you to amend the indictment for factual basis, what authority do you have other than the suggestion of the lower court for us to do that? Well, I think in White, in the concurrence in White there's a little guidance for how prosecutors and courts can handle situations like this where the parties mutually agree that a defendant should not serve the enhancement, but where the law suggests that if a firearm is used, that enhancement must be applied. The special concurrence in White, Justice Tice wrote that the people can fashion the indictment and the factual basis to not mention a firearm specifically. And if that's true, if that is really a proper way to negotiate around this enhancement, then there's no reason the court couldn't allow the people to do it in this case. The parties agreed to a term that the defendant would serve 30 years. This isn't a case like Whitfield where a defendant's having something happen that he didn't bargain for. The parties mutually agreed to this term, so there would be no reason that as an equitable remedy, this court couldn't say the proper thing to do is enforce that plea agreement, give the parties what they asked for, and let the people negotiate around the enhancement like they intended to do, the proper way, which is amend that indictment, amend that factual basis, and enforce the plea agreement. But of course, we don't believe we have to get there, because we believe that the error here was merely voidable and cannot be raised on post-conviction review. But counsel, let me ask you this question to go back to Justice Tice's earlier question about whether or not you're asking us to go back and reverse a long line of cases. It doesn't seem to me, number one, that you really address the stare decisis argument or rationale to take that leap. But what I'm wondering on your argument, void versus voidable, are you also suggesting that our precedent is not clear? Is that something that's short of reversal of those cases, to clear up any confusion about what's void and voidable? I think the confusion stems not from the holdings themselves. The holdings have been clear. In a case like Arnold, the court says the sentence is outside the statutory range. It's void. So there's not confusion about what this court has said about it. The confusion is, how do we have these two lines of cases? And this goes to your stare decisis question, too, I believe, Justice Gilbert. How do we have these very clear pronouncements about what jurisdiction means in Illinois? In Belleville-Toyota and NRAMW, we saw this court very clearly, very carefully, in very detailed opinions, set out what subject matter jurisdiction means in this case, because there was confusion. The confusion stems from, how does this voidness rule sit alongside this line of cases about jurisdiction? Because this court has also said very clearly, without any confusion, that voidness is a question of jurisdiction. In NRAMW, this court said, an order is only void if it was entered without jurisdiction. So that's where the confusion is. How do we reconcile these two doctrines? It's not in that we don't understand what the court has said about void and voidable orders. It's that, how do these two lines of cases coexist, especially when we have a constitutional amendment explaining how jurisdiction works? On stare decisis, just to add one thing, this court has said that it should not revisit prior holdings unless there is a compelling reason to do so. And I think that conflict between these two line of cases, I think the existence of the constitutional amendment and I think the fact that this court has said that an order is only void if the court did not have jurisdiction to enter it, is a compelling reason to revisit those holdings. Would it make any difference in your analysis if the sentence were too great versus too little? Well, one way it would make a difference is that if the sentence was too great, it's likely the defendant would raise, or could raise, a due process claim, a post-conviction petition. So there would be a constitutional basis for that claim and a constitutional basis for a remedy that would lower the sentence. And that goes to the fact that this is a post-conviction, but my reference is to the void versus voidable analysis. No, I don't think so. The court has jurisdiction to sentence a defendant. It can make mistakes. If it makes a mistake that, in imposing a sentence too short or imposing a sentence that's too long, it's still just an error. I don't think it matters the nature of the error for the void versus voidable question. Again, that may raise a due process problem. That's not present when a sentence is too short. Just briefly, Your Honors, setting aside voice for just a moment, People v. White, whatever it did, it did not establish a new constitutional rule of criminal procedure. For that reason, it should not be it doesn't give rise to a claim on post-conviction review. And as Justice Burke alluded to, we are asking if this court holds that the defendant's sentence was void and can raise that void claim in post-conviction review, that it fashion an equitable remedy. There's precedent for this court issuing equitable remedies like it did in Whitefield. And it could allow the people to amend the indictment on a factual basis and then enforce the plea agreement and give the parties what they bargained for. And just finally, turning back to voidness for a second, this court in the last 12 years has finally clarified what subject matter jurisdiction means in Illinois. But there's still one area where there is, as Justice Kilbride alluded to, a little bit of confusion. And it's an area where this court really hasn't reconciled the constitutional amendment of 1964 with its rule on voidness. This case presents the court an opportunity to do so. It should do so, it should hold that defendant's sentence was voidable, not void, and it should reverse the judgment of the appellate court. Thank you. May it please the court and counsel, I'm Mario Plattis, Assistant Appellate Defender with the Office of the State Appellate Defender. I represent the defendant Apolline E. Smith. The state has raised several issues on appeal, one in its petition to leave the appeal, technically four in its opening brief, and then a fifth issue in its reply brief. As far as I can tell from the reply brief, the only real issues left are the voidable issue, estoppel, and what to do on remand. As I read it, the parties seem to agree that Teague doesn't apply here because, as the state puts it, we're not dealing with the constitutional rule of criminal procedure, and because Teague only applies to constitutional rules of criminal procedure, this court as the state acknowledges in its reply brief, this court need not do the Teague analysis. As for whether white is cognizable in a post-conviction proceeding, I don't think there's any real question that an unauthorized sentence issue is cognizable in a post-conviction proceeding. The state's opening brief and its reply brief cite no authorities that say such an issue isn't cognizable in a post-conviction proceeding. There's no real question that Smith's sentence wasn't authorized by the statute. Therefore, this is exactly the kind of claim that can be raised in a collateral proceeding, post-conviction, or otherwise. Is this a due process claim? We're not making a due process claim here. We haven't. Does that make any difference under the constitutional analysis that's necessary on a post-conviction? I don't think so, because this court has found in People v. Thompson and other cases that the parties may raise unauthorized sentence issues in any proceeding that's properly before the trial court. People v. Thompson specifically says this kind of claim, an unauthorized sentence claim, does not depend on the post-conviction hearing app for its viability. So, as for the state's voidable argument, I understand that the appellee in the appellate court can raise, or has a little more flexibility for this court in terms of the issues it can raise. I'm not aware of any law, though, that says a party can wait until its reply brief to raise a brand new issue. Closing counsel says this issue was raised by our description of the issue. That's simply the appellate court's holding. If this issue was something to raise, it would have been obvious from the appellate court's holding. All I did in our brief was describe what the appellate court, or state what the appellate court said in finding the sentence void. So, we think the state's forfeited this argument, but even if it hasn't, I don't think there's any real merit to it. First of all, in its reply brief, and here the state discusses People v. Davis and Velvo-Toyota, both those cases preceded this court's opinion of People v. Thompson. Thompson specifically rejected the state's voidable argument from Davis. In Thompson, the defendant argued that his extended terms, I'm sorry, the state tried to argue that the defendant's extended terms were merely voidable, therefore he couldn't raise it in a post-conviction proceeding, and the court said no. It looked at Davis, and it said this is a sentencing issue, not a constitutional claim. I think Davis was a double jeopardy case, and it refused to apply Davis. This court has already dealt with this issue, and there are just decades of published cases that hold unauthorized sentences are void. If the court changes now, as the state is asking, it will be overturning a lot of decisions. The state discusses the constitutional amendments, specifically discussing Article 6, Section 9, that gives the trial court jurisdiction over all justiciable matters. That isn't the only part of our Constitution, though. Article 2, Section 1 prohibits the trial court from exercising powers that properly belong to another part of the government, here the legislature. In this case, our Constitution prohibits the trial court from rewriting the criminal code from the bench, which is what it's doing if it overlooks or ignores a pretty clearly worded statute that doesn't contain any exceptions. The legislature has the police power to define crimes and criminal penalties. This idea is embedded in our Constitution. This court has found, in interpreting the proportionate penalties clause, that that part of the Constitution is directed to the legislature in its function of declaring what conduct is criminal and the penalties for the conduct. What the state's essentially arguing here is that the trial court can ignore a very plainly worded statute, read an exception into it, or some kind of limitation into it that doesn't exist, and essentially exercise the legislature's power to set the penalty for this crime. Our Constitution doesn't permit that, despite it authorizing or giving jurisdiction to the trial court over justiciable matters. I'd like to touch on something that I think the questions we're getting at in terms of what happens if the court finds that unauthorized sentences are really avoidable. The state's argument is that here Smith's sentence is merely voidable, not void. Voidable orders, voidable judgments can't be challenged collaterally, therefore he can't challenge his unauthorized sentence in this proceeding. If an unauthorized sentence is merely voidable, it can't be attacked collaterally, the state and defendants would not be able to challenge unauthorized sentences, except in direct appeal. Of course, the state can't directly appeal this kind of issue. It's a sentencing issue. It can't file a direct appeal. This court, by intention, has restricted the state's ability to do that. Its only options are mandamus or something along those lines. That's not a direct appeal. It's a collateral proceeding. So essentially, if the state's right here, the only person who can ever challenge an unauthorized sentence is the defendant in a direct appeal. And as long as he's happy with his sentence, that's it. It'll stand. Because no one will be able to challenge it collaterally because it's voidable, not void. So, I already discussed that I don't think there's anything to the state's argument that white isn't cognizable in a post-conviction proceeding. I mean, first of all, it's an unauthorized sentence issue. We don't even need white to decide that here.  Even without white, as the appellate court found, the sentence would be void because it's not authorized by the relevant section. Counsel, wouldn't your briefs indicate on that whole voidable issue and how the sentence can be attacked, but isn't one of your positions, and the reason that you would like the sentence vacated, is that the defendant's sentence can change at any time? Yes. And how would it be able to be changed at any time? Well, our position is that it's void because it's unauthorized. So, we believe it can be attacked collaterally by the defendant, by the state. The state tomorrow could file a mandamus petition and ask the trial court, or ask this court, to vacate a sentence. It's unauthorized. It's void. The state has done that in many cases, including cases we've a lot discussed in our briefs. There's nothing that prevents the state from doing that. Not benefit of the bargain, not stop all, not attend to the parties. All that matters is what he was convicted of and what the statute says. What the parties intended, the trial court's knowledge, what everyone wanted, doesn't matter. All that matters is the conviction and the statute. If they aren't consistent with each other, it's not authorized. It's void. And it can be attacked by any party, any time, in any court where the proceedings are properly before the court. There's no authority in the state's briefs that suggests otherwise. And this court hasn't done otherwise in its cases. So, touching briefly back on this cognizable post-conviction proceeding, again, there's no question Smith's sentence is not authorized by the statute. It's void. The parties both discussed Hickey v. Hickey, this court's decision from 2001. I think the state misreads Hickey. What Hickey says is that if we're not dealing with a constitutional rule of criminal procedure, we do not apply Hickey. The state seems to interpret it as if it's not a constitutional rule of criminal procedure, it's not retroactive. But that's not what Hickey says. And I don't think the retroactivity analysis is even appropriate given that this is all coming from the statute that was in place when the defendant was convicted. So, again, the parties seem to agree. We're not talking about a constitutional rule of criminal procedure. Therefore, Teague does not apply here. And as the state put it, this court need not resort to the Teague analysis at this point. Even if Teague applied, though, as we argued, we wouldn't be talking about a new rule here. White did not break new ground. It's completely consistent with decades of existing precedent at the time Smith's conviction was final. It simply applied the general standard, the unauthorized sentence rule, to the kind of circumstances it was meant to address in a negotiated case, among the kind of circumstances this court has applied it before. The outcome wasn't unprecedented. This court has vacated sentences that were not authorized by statute in the context of a negotiated case. White also did not create any new obligations for the parties. The trial court always had to make sure the sentence complied with the statute. That is just an obligation of the court. The prosecutor always had the obligation to make sure the recommended sentence was consistent with the statute if the prosecutor wanted the court to accept the agreement and send for the defendant as the parties agreed. White doesn't limit the prosecutor's discretion to negotiate pleas. The court's decision in White, the opinion is very clear. The parties are free to negotiate things. Nothing in White prevents the parties from doing that. The issue in White, and this is because the issue in White wasn't can the parties negotiate away an enhancement. The issue in White is what must happen if the parties don't do that. Next, there's no evidence that White and what it held wasn't apparent to all reasonable jurists. There's no precedent existing since conviction became final that contradicts White. There's just nothing. Furthermore, Teague validates reasonable interpretations of the law, but there's no evidence that the trial courts in the few cases that have hit this issue seriously considered the relevant statutes and existing precedent, either the firearm enhancement statute which is very plainly worded, or the general rule against unauthorized sentences. Or for that matter, I don't think the trial court considered cases like Thompson, Wade, and Pete Wexler, O'Brien, and Roe. Instead, what I think these cases represent are trial courts reading an exception into a statute that doesn't contain an exception, neither in the statute itself and no court has interpreted the statutes containing exceptions that would have to apply here to support the state's argument. Moving on, the state has argued that Smith is a stop on challenging this plea and sentence, or challenging the challenging the sentence and plea in this proceeding. There's no law, there's no Illinois law that supports the state's argument here. There's a recent, relatively recent Illinois Supreme Court decision that both the parties discussed, Peeble, Exrell, O'Brien, and Roe where the court said very clearly, very explicitly, the stop rule doesn't apply here because we're talking about an unauthorized sentence. A sentence the parties couldn't agree to and that the trial court didn't have authority to impose. Furthermore, if a stop rule had applied, it would have applied in white. It just doesn't make sense. There's no difference, factually or legally, there's no relevant difference between white and this case. If a stop rule was something that could have allowed that sentence to stand, it would have operated there to do so. Mr. Prattis, though, in connection with the stop rule argument, you argue that you're not taking factually inconsistent positions. At the time of the plea agreement, you believed your sentence was legal and valid and now you're arguing your sentence is not legal and therefore void, so how are these not factually inconsistent positions? The opinions that you just outlined there, I don't think are factual statements. They're opinions of the legality of the plea. Legally inconsistent positions do not trigger  stop rule. Legal inconsistencies do not. But would you have to take a factually different position on the plea agreement? I don't know that that would be necessary because if the plea agreement and sentence are vacated, Smith doesn't have to say anything when this goes back. He doesn't have to testify. He doesn't have to say anything. At this point, we're making legal arguments. The trial court defense attorney is making legal arguments. He doesn't have to say anything that contradicts the facts on a factual basis. All that would be happening would be different legal arguments made in the case that might be different from the legal arguments that occurred in the trial court so far, but wouldn't necessarily be factually inconsistent positions on anything in this case. Shouldn't we be concerned in our analysis of the repercussions of this, or even of White, when it's an unusual situation, it seems, when a defendant has a sentence declared void, which is less than what is required by statute. So what's the reason for that? Secondly, is this an opportunity for a defense counsel to understand that this could be a void sentence and still negotiate that, thereby giving the defendant a get out of jail free card later on at some time? As to the first question, I think we can be concerned about a defendant waiting for a long time to raise a claim like this, but that isn't what happened here. Smith's conviction became final I think on June 3rd, 2011. He filed his post-conviction petition two months later. We're not talking about a case where someone waited in his prison cell, plotting his long-term, grinding, slow escape. We're talking about someone who filed the claim almost immediately, within the normal timeline for post-conviction petitions. Hypothetically, in a case where the defendant does wait decades, I think it's really easy to apply a rule that says this is an unauthorized sentence, therefore it's void and can be challenged directly, collaterally, any time, except to the extent that the party resisting the attack, whether it's the defendant, whether it's the state, can show some prejudice. And in some cases, maybe the passage of time itself is enough to show the prejudice. The defendant waited 30 years or the state waited 10 years, that's prejudice right there. Or if either party can point to a witness that has become unavailable, that's prejudice. How does that work into a voidable sentence, so if it's absolutely void? I think the way it would work is that exception would allow the courts to respect the legislature's authority to set penalties for crime without unnecessarily deviating from what the legislature wants. If the parties can show an exception that actually prejudices the case at trial, I think in that case, you'd be balancing the legislature's authority to set criminal penalties and have its authority respected by the trial courts versus the party's ability, or the party's right to not be prejudiced by someone who's waiting on a claim. I think there's a little bit more of a balance there than what we have here, where there's no evidence that there's any prejudice, and there's no evidence that Smith waited or schemed to delay things. As I said, he filed his post-conviction petition within three months, within the normal deadlines for filing post-conviction petitions. This is embarrassing, but I'm going to have to ask you to, I don't remember your second question. I'm sorry. Is it an opportunity for defense counsel to sandbag? I guess I don't understand what way. Defense counsel knows it's a void sentence, but agrees to it because it benefits his client, he gets 30 instead of 45, and knows full well that 20 years from now, he can still change that if he wants to. I guess the same thing. I think, to the extent that anyone's doing that or thinks they can get away with that, if the rule is you can raise this claim, it's unauthorized, but no, the other party is going to have an opportunity to show, and not even very much prejudice, just here's a witness we had on our list for trial, we can't find this person. Or it's been 10 years, 12 years, how are we supposed to do this now? The physical evidence is missing, or it's degraded in some way. If we had facts like that here, it would be different, but we don't. As glad as I see your time is running, should the state be allowed on the remedy issue to go back and amend the indictment to omit the reference to firearm? I don't think so. I don't think that's, it's not consistent with white, for one thing. I don't think it would be fair to the defendant, because the negotiations were cut off with a promise the state couldn't keep. Had the trial court stepped in and said, look, I see this agreement, I'll approve it, but you should know this is not enforceable, the parties would have gone back to the table, and at that point, if they're going to take that fact out of the indictment, that he personally discharged the firearm, that fact more than doubles the mandatory minimum. And at that point, a competent defense attorney might point out maybe we should take a couple years, three years off this sentence, and the parties reach a deal that complies with the statute that everyone's satisfied with. It could have gone that way, and it didn't, because no one was paying attention to the law. So in that sense, you're saying the defendant still would not have necessarily gotten the benefit of his bargain, because once the omission was there, he could have tried to work for a lighter sentence. I mean, possibly, but the real thing to me is, there's no benefit here, because any day it can be challenged. He can't enforce the promise the state gave him. The trial court can't enforce it. The state can't credibly commit to that promise, because down the road, a different state's attorney takes over and decides, I think that was a bad deal. We should do something about that. File a mandamus petition. It could happen. There's nothing in the law that prevents that. Counsel, you said earlier that there's no evidence of prejudice here. How do we know there's prejudice or no prejudice? I'm saying there's nothing in the record that would indicate that, and there's nothing, nobody has tried to introduce new facts before this court that would suggest that. I'm not aware of anything that indicates there's any prejudice, and I feel like I need to point this out, that the way we've had for three years isn't due to Smith. You know, he filed his post-conviction petition in August 2011. The trial court dismissed it. The way after that isn't because he was doing anything wrong. It isn't because he plotted that. That's just how it turned out, because his petition was dismissed. Had it not been dismissed, I don't know if the trial would ever be over right now. Well, I guess the ultimate question on prejudice is what happens if you win the argument today and it goes back? What happens then? You're not asking for it just to go back to enter a new sentence. You want to go back to square one, don't you? Well, at the very least, a new sentence is going to have to be imposed, because the current sentence violates the law. Once a new sentence is imposed, at that point, I don't, I mean, if it's consistent with the law, that means it increased. Therefore, he's no longer getting the deal they made that he can file a post-conviction motion within 30 days. So I think, I mean, I think really all that needs to happen is it goes back, the sentence is vacated, and further proceedings are conducted not inconsistent with the law. And that's, I think, basically what we're asking for here. But what you're saying is further proceedings consistent with the law wouldn't allow them to go back and impose a sentence that should have been imposed in the first place. The court can impose it, but at that point, because it's not part of the agreement they made, he'd be able to file a post-conviction motion saying, you know, we agreed to this. So what you're, in essence, you're saying is it goes back to square one. After the trial court imposes the new sentence, yes. But I guess practically speaking, they'd be back in the position of they'd have to negotiate something further, or he'd have to file a post-conviction motion at that point. Thank you. Just a couple of points briefly in rebuttal. Going back to Justice Thomas' question about the remedy, the defendant argues that the problem with the remedy we're asking for, if this court holds that the defendant's sentence truly is void, is that the state promised something that it could not actually give, which is a 30-year sentence, because that, the defendant argues, if that sentence is void, it could be attacked at any time. But the remedy we're asking for is to give the state the ability to give that promise it made, to give the defendant the 30 years he asked for. If the state's permitted to amend the factual basis of the indictment, then the state truly could give the promise that defendant bargained for. I want to talk again a little bit, because this came up on the defendant's argument, about what remedies are available if this court holds that the sentencing order here is merely voidable. In the future, what can the state do to fix erroneous sentences? I've talked about that a little bit, but I want to talk about one more thing I didn't really mention, which is this court has broad supervisory authority, and original actions can be filed in this court. In cases where the state files an original action saying that there's an illegal sentence that is too short, this court can certainly fashion any sort of equitable remedy, depending on the equities in that case, depending on the facts of that case, using its broad supervisory authority to fix a problem if it arose and the state needed a way to fix an illegally short sentence. On that same point, I think it's important to point out that this court has, this goes back a little bit to stare decisis, this court has in the past fixed errors that it had made in prior opinions using inartful language or otherwise conflating different doctrines. One example is People v. Blair, where this court said, look, in the past Illinois courts have used the terms forfeiture and waiver interchangeably, and there really is a distinction and it finally made that distinction in Blair going forward. I'm going to touch on forfeiture just for a moment. The appellees, it's true, the defendant argues that the holding below was that the sentence was void, and that's where voidness really came up, it didn't just come up in the appellees' brief. But the void nature of the order wasn't central to the holding below. The appellate court did not hold that white was applicable in post-conviction review and that a white claim can be raised on post-conviction review because it renders a sentence void. It held that white should apply retroactively under Teague and therefore the sentence was void. The void nature of the order was only used as an argument for why white is applicable in this case in the appellees' brief in this court, and that's when it became when the state had to answer the question of void versus voidable orders in the reply brief in this court. Turning once again to the distinction between state remedies available to the state and remedies available to the defendant if these sentencing orders are not void, meaning voidable. I should point out there's a case before the court now, it's still in the briefing stage, people v. Castleberry. So far only the appellants' brief has been filed. But that's a case where a defendant is making the exact argument that we're making here. Now the procedural posture is a little bit different, but in Castleberry, the defendants' appellants' brief argues that the void versus voidable distinction cannot be reconciled with the Constitution, with Article 6, Section 9, and with this court's line of cases in Belleville-Toyota. So this isn't a question of the state versus defendants. This isn't a question of creating a state-friendly rule going forward. This is just about getting the rule right and reconciling this court's cases on jurisdiction with what this court has said about void orders. But what if, massive question, if we were to agree with you and we were to step aside from 19 years of precedent, what would happen then? Would we be back into the prospective-only application problems? How would we sort it all out going forward? I think that's certainly an issue that would have to work its way through the courts. I think the easy answer is for errors going forward, we would have a clear rule. Where sentences have been entered, where judgments are final, where sentences could otherwise be challenged under the old void rule and no longer can be challenged because of time has lapsed to file a post-conviction petition or whatever the case may be. I think it will be a more difficult question, certainly. But the cases come to this court to set a clear rule going forward for all of Illinois courts to apply, the lower courts and this court. And so, although there will be cases that arise in the wake of this court changing its rule on voidness, it's important that the court reconcile its line of cases and come establish a clear rule that can be easily applied by the courts below and that we get these cases right going forward. So again, for that reason, because the defendant's sentence was merely voidable and not void and for the other reasons stated in our brief, we ask this court to first the judgment of the appellate court. Thank you. Case number 116572 People of the State of Illinois v. Smith is taken under advisement as agenda number 12. Mr. Soltanz-Ading, Mr. Plattis, thank you for your arguments today and your excuse to discuss them.